## DUSENBERRY *a.* WOODWARD.

*New York Superior Court, General Term ; March,* 1855.

ADMISSION OF PART OF PLAINTIFF'S CLAIM.—COMMITTAL.

That the defendant offered to let plaintiff take judgment for a sum admitted in the answer to be due, which offer plaintiff declined, is no reason for denying plaintiff's motion that defendant pay into court the sum admitted to be due.

Sect. 385 of the Code, providing that the defendant may offer to permit the plaintiff to take judgment, was intended of a compromise, and does not profess to govern the case of a portion of a demand admitted in a pleading, which pleading raises an actual litigation as to other parts of the claim.

The case of Smith *a.* Knapp, (4 *Sandf.* 711), examined, and its weight as authority qualified.

The history of the practice of punishments as for contempts reviewed.

Before the Code, an interlocutory order for the payment of money admitted to be due in an answer, and which would be enforced by commitment, would in general be granted only to enforce payment of moneys received or withheld in violation of a trust, and not of an ordinary debt.

Under the Code, the same rule exists, and an order to pay money admitted to be due in a fiduciary capacity, so that under § 179 of the Code, defendant might be arrested at any time in the action, may be enforced by commitment.

The cases of Meyers *a.* Trimble, (*ante* 220 and 399), and Merritt *a.* Thompson, (*ante* 223), dissented from.

Where upon liquidation of a partnership concern, one partner receives assets and expressly admits that a certain sum is due to his copartner, he will be treated as holding it in the character of agent or trustee.

But where the partnership of D. and W. was dissolved in January, and D. bought out W.'s share, leaving the title of certain lands in W., as security for purchase money, and in July a new contract was formed providing that W. should

take at an appraisal the lands he had held as security, deduct his claim and pay over the balance, *Held*, that the balance admitted by him, after appraisal, was not held in a fiduciary capacity, and he was not liable to arrest by way of enforcing an interlocutory order for its payment.

Appeal from order that defendant pay into court a part of plaintiff's claim, which he admitted in his answer to be due.

The answer of the defendant in this case, admitted a part of plaintiff's claim, and the plaintiff thereupon obtained an order at special term, directing him to pay into court the sum of $4222 47, with interest from the date of the order, or (upon giving security for the sum of $876 65, in the manner specified), to deduct that amount from the above sum, and pay in the balance only. There are other provisions of the order not necessary to be noticed. The order was made under the 244th section of the Code, upon the ground of an admission in the answer of part of the plaintiff's claim being just.

*Mr. Dana*, for defendant. Sec. 244 of the Code, applies only to a claim which is unconditionally admitted. (4 *Sand.* 673).

It was not intended to change the means of enforcing payment of a money demand, and the admission of a part cannot give the plaintiff any greater right than he would have if the whole cause of action were admitted. The facts of the case show that the defendant should not be treated as holding the funds in a fiduciary capacity.

There is no equitable claim to the exercise of unusual power by the court.

The former decision of the court, in 4 *Sandf.* 711, should be conclusive. The same decision has been reiterated in Ryder *a.* The Union India Rubber Company,* not reported.

---

* The decision alluded to as the case of Ryder *a.* The Union India Rubber Company, was rendered at General Term of the Supeiror Court, held by Oakley, Ch. J. Duer, Hoffman, and Bosworth, J. J., 23d December, 1854. The substance of the opinion was as follows :—

The complaint in this suit contained two distinct causes of action. One for goods sold and delivered—the other for the recovery of money received for goods sold and delivered. An offer was made by the defendants previously to the answer to allow judgment for a sum greater than was claimed in the first count. This offer was not accepted, and an answer having been put in, the case now comes before the

*Mr. J. Burrill, Jr.,* for plaintiff. I. The answer admitted that there was due to the plaintiff the sum of $3848 03, with interest from February 25, 1853 ; and the plaintiff was entitled under sect. 244 of the Code to an order directing the defendant to satisfy that part of the plaintiff's demand. *Code,* § 244, Roberts *v.* Law, 4 *Sand.* 56, 642.

II. The principle claimed to be established by "Smith *a.* Knapp," 4 *Sand.* 711, that the order will not be granted when an order made before answer, has been refused, is unsound.

1. If the order is accepted, the plaintiff will be entitled to judgment, and will not require the aid of § 244.

2. If the effect of rejecting an offer, be to deprive the plaintiff of this legal right and to secure a benefit to defendant, it is coercing the plaintiff into an acceptance of less than is justly due, and rewarding the dishonest debtor.

III. The offer differs widely from an admission in the answer. Code, § 385. If the offer be unaccepted, it is deemed withdrawn. It is a conditional *cognovit.* The admission in the answer of the justice of a portion of the plaintiff's claim, terminates all litigation as to that portion, and can be used against the defendant in all stages of the action.

IV. The practice of compelling the payment of money into court, when a sum was admitted to be due, was well settled in the Court of Chancery, and the Code has merely confirmed the practice, by legislative enactment, and extended its application. Clarkson *a.* De Peyster, *Hopk.* 274. Mills *a.* Hansen, 8 *Vesey,* 68. 1 *Barbour's Ch. Prac.* 237. 3 *Daniel's Ch. Prac.* 467.

V. The objection that the order should not be granted, because the mode of enforcing it is difficult or doubtful, ought not to have any weight.

---

court on motion, under section 244 of the Code, which provides that when the answer of the defendant admits part of the plaintiff's claim to be just, the court on motion may order such defendant to satisfy that part of the claim, and may enforce the order as it enforces a provisional remedy. The court denied the motion without costs, remarking that this question in a precisely similar case, (Smith *v.* Olssen, 4 *Sandford Sup. Ct.,* 711), had already been determined by the court, and that while the mode of enforcing such an order is unsettled, the court would under such circumstances, leave the plaintiff to his ordinary and ascertained remedies.

1. If the plaintiff has brought himself within the Code, he is entitled to his order.

2. If the order cannot be enforced, the granting it, will not injure the defendant.

3. The question as to the mode of enforcing it, does not arise.

VI. But there is no difficulty in enforcing the order.

1. The Code says it may be enforced as a *provisional remedy*. (*Code*, § 244.)

2. It may, perhaps, be enforced by execution, regarding the order as a species of judgment.

3. If not capable of being enforced by execution, it comes within the provisions of the statute relating to contempts, which provisions are still in force. (1 *Duer*, 512; 2 *Rev. Stats.* 534, § 1, *Subd.* 3.)

4. It is discretionary with the court to punish the disobedience of such an order, as a contempt, and this discretion will protect the party against any abuse of the power.

5. Even if after the attachment issued, the court were satisfied that the party could not comply with the order, they would release him from the order. (*Laws* 1843.)

VII. The facts of the case show that the money is due from the defendant to the plaintiff, in the capacity of trustee.

By the Court, Hoffman, J.—The action is to adjust and recover an amount alleged to be due to the plaintiff from the defendant, upon the winding up of a certain joint concern relating to a general law and commercial agency, and the purchasing and selling lands.

The plaintiff claims a balance of $4593 to be due to him.

The answer was served on the 7th day of May, 1853, and it was therein admitted that there was a balance due to the plaintiff, of $3848.

Accompanying this answer was a written offer that the plaintiff might take judgment for that amount, with interest from the 23d of January, 1853, and costs, pursuant to section 385 of the Code.

This offer was not accepted, and an order of reference was made, which is now in progress of execution.

The plaintiff now moves for an order that the amount admitted in the answer to be due shall be paid into court, to satisfy part of the demand of the plaintiff, under the 244th section of the Code.

It is objected, that no such motion can be made after an offer to allow judgment has been made under the 385th section of the Code. To support this objection, the case of Smith *a.* Knapp (4 *Sandf. Rep.*, 711), is referred to.

In that case the defendant, before answering, made an offer, under the 385th section, to allow judgment to be taken for the sum which he afterwards by answer admitted to be due. Then the motion was made to compel him to satisfy the amount he admitted to be due. The court held that it possessed the discretionary power to refuse the application after an implied waiver by the plaintiff; that the case was one in which it was proper to exercise such discretion, and especially while the remedy to enforce it was not clearly settled under the then late amendment of the 244th section, made in 1851.

The court has now been called upon to pass upon the effect of that section as amended, so far at least as the present application is concerned, and has given it much attention.

The 385th section provides for a judgment after action, and before trial or verdict. An offer in writing is to be made to allow judgment for the sum, or property, or to the effect specified. If it is accepted within ten days, the summons, complaint and offer are to be filed, and the clerk must enter judgment accordingly. Here there is an end of the action. If not accepted, *the offer is to be deemed withdrawn, and cannot be given in evidence.* Of course it cannot be used to affect the defendant in his defence. It is indeed under the Code, as if it had never been made, except to settle the question of costs. If a less favorable judgment is obtained by the plaintiff, he pays costs from the time of the offer. In Scheidner *a.* Jacobi, in this court (1*Duer*, 694), ninety-three cents made the costs to fall upon the plaintiff.

It seems clear that this section was intended to promote and regulate a compromise after action commenced, and did not contemplate the case of an admission, by answer or otherwise, of a sum specified, or any other sum being due, and a certain

Dusenberry a. Woodward

litigation as to other parts of the demand. It does not speak of a sum as admitted. It is an offer to allow judgment to be taken for a certain sum, and it is treated by Justice Cady (7 *How. Pr. R.* 456), as the *cognovit actionem* of the old practice, in a modified form. It becomes substantially such if accepted, and can be made, and is in practice frequently made, the means of attaining the same objects. But certainly it does not profess to govern the case of a portion of a demand admitted in a pleading, which pleading raises an actual litigation as to other parts of the claim.

It is obvious that if a case is presented of an admission in an answer, that part of a sum demanded is due without any offer to allow judgment, the question as to the mode of enforcing an order must arise.

The provisions of the Code which bear upon the subject are the following:—The 178th section provides that no person shall be arrested in a civil action except as prescribed by that act; but this provision shall not affect the act to abolish imprisonment for debt, passed April 26th, 1831, or any act amending the same; nor shall it apply to proceedings for contempt. This section remains unchanged from the original enactment in 1848. (*See* 1 *Code R.*, *N. S.* 210.  6 *How. Pr. R.*, 241).

By the 302d section as amended in 1851, in all cases of commitment under this chapter, (that relating to supplementary proceedings) or the act to abolish imprisonment for debt, the person committed, may in case of inability to perform the act required, or to endure the imprisonment, be discharged from imprisonment by the court or judge committing him, or by the court in which the judgment was rendered, on such terms as may be just.

By the Code of 1848, as amended in 1849, the 244th section directed, that, until the legislature should otherwise provide, the court may appoint receivers, or direct the deposit of money or other things, and grant the other provisional remedies now existing according to the present practice, except as otherwise provided in that act.

And the provisions of the Revised Statutes, " of proceedings as for contempts," being left in full force by section 471 of the

Code, (see The People *a.* Compton, 1 *Duer*, 512), the result is, that until the amendment of section 244, made in 1851, the proceeding to enforce payment of a sum of money or of costs ordered to be paid before final judgment, was regulated by the previous law and practice.

What was that law and practice?

1st. That orders for the payment of money into court were by the rule of the English Court of Chancery and of our own, enforced by process of commitment for contempt. (2 *Daniel's Pr.* 1653. Needham *v.* Needham, 1 *Hare*, 633. Crawley *v.* Crawley, 3 *Br. C. Rep.*; and *anon.* in the Exchequer, 2 *Fowler's Pr.* 207).

2d. That such interlocutory order was only made in cases of the money being received by persons in a fiduciary capacity, or being held in trust, as by executors. If the money demand was in the nature of a debt, the court would not interpose until the hearing. (Peacham *v.* Daw, 6 *Mod. Rep.* 98. Lee *v.* Macauley, 1 *Y. and Col.* 207. Blake *v.* Blake, 2 *Sch. and Lefroy*, 26. Lester *v.* Donald, 1 *Jack. Walk.* 253. And particularly Richardson *v.* The Bank of England, 4 *Mylne and Craig*, 174.) Haggerty *v.* Duane, 1 *Paige*, 321, was a case of admission of money in hand by a trustee. Clarkson *v.* De Peyster, 1 *Hopkins*, 374, was that of a guardian defendant.

Although the mode of enforcing an order in England was the same as for enforcing a decree by process for contempt ending in a sequestration, this distinction as to the cases in which money would be ordered to be paid in, was of great moment, under our statutes and rules.

4th. The act of February 2d, 1802, (session 25, cap. 15,) gave power to the Court of Chancery to enforce its decrees by execution, either against the body of the person who shall be bound to perform the same, or against his goods and chattels, and in default thereof, against the lands and tenements of such person, to be in such form as the court should from time to time direct. This act was renewed in section 4 of the revision of 1813, (*Vol.* 1, *p.* 437), with the additional provision that no goods, or chattels, lands, or tenements, should be bound as against an innocent *bona fide* purchaser, without notice, until an actual levy or seizure made there-

29

upon.  The Revised Statutes of 1830 contained the same pro-
vision with some modifications.   (2 *R. S.* 183, § 110, 111, *2d.
ed.*)  *First*, no *process* should be issued on *any final decree*,
until the same should have been enrolled as therein provided.
*Second*, until an actual levy, no goods or chattels should be
bound by execution as against a purchaser without notice.
Lands and tenements were omitted.   The statute had provided
a system of enrolment and docketing decrees, in order to cre-
ate a lien upon lands similar to that of judgments, which did
not exist before.

5th.  It is clear, that if a case was ready for hearing, upon
bill, and answer or otherwise, as in Peacham *vs.* Dorr, (6 *Mod.*
98), or Gilbert *vs.* Colt, (1 *Hoffman's Pr.* 323), and there had
been an admission of a certain amount due by the accounting
party, the decree to account could have ordered payment of
that sum into court, while it directed the adjudication of con-
tested matters by a reference or an issue.   And the court could
issue an execution to compel performance under the statute.

That statute, from its first enactment, spoke of decrees, not
final decrees.   The revised act of 1830, requires enrolment of
a final decree before process.   If enrolment had been neces-
sary, a decree for an account, and many mere orders were
capable of enrolment, and there might be a succession of en-
rolments.

Minthorne's Executors *v.* Tompkins, (2 *Paige*, 102), was the
case of an enrolment of a decree of dismissal of a bill as to
one party ; and it was held that a subsequent decree as to
other parties could be made by a continuance on the record.
McGregor *v.* Popham, (4 *Hare*, 162), was a case of an order
refusing a new trial being enrolled.   See also McDermott *v.*
Kirby, (1 *Phillips*, 208), as to enrolling decrees for an account,
and *Daniels' Practice, Vol.* 3, *p.* 1000, &c.

In Poillon *v.* Houghton, (2 *Sand. S. C. Rep.*, 649, *June,*
1849), an order had been made in an equity suit overruling a
demurrer with costs, and liberty to answer.   A precept issued
to collect the amount out of the goods and chattels.   The
court observed that before the act of November, 1847, such an
order would have been enforced by process of contempt, but
the sum is now to be collected by process in the nature of an

execution against personal property. That the provisions of the Revised Statutes requiring an enrolment before execution, and the consequent rule of the Supreme Court, (the 77th), related to final decrees only. The order in question was purely interlocutory, so that no enrolment was necessary. The costs when taxed under the present law constituted a judgment, which was due and payable like any other judgment in a court of record. (See also McGrath *v.* Van Wyck, 3 *Sand.,* 750).

By the statute (of proceedings as for contempt) the court had power to punish by fine or imprisonment, or either, any neglect, or violation of duty in the cases enumerated. Parties to suits, and all other persons, for the non-payment of any sum of money ordered by such court to be placed, in "cases where by law execution cannot be awarded for the collection of such sum." (2 *R. S.,* 534, § 1, *sub.* 3).

The 4th section of the same statute provided, that when any rule or order of a court shall have been made for the payment of costs, or any other sum of money, and proof by affidavit shall be made of personal demand of such sum of money, and a refusal to pay it, the court may issue a precept to commit the person so disobeying to prison, until such sum and the costs and expenses of the proceedings shall be paid.

These several provisions being read together, and in connection with the third section, it seems manifest, that the precept and imprisonment for non-payment of a sum of money other than costs ordered to be paid, could only be permitted where execution could not be awarded for the collection of the sum.

In Brockway *v.* Copp, (2 *Paige,* 578, *Oct.* 1831), there was an appeal from an interlocutory order of a vice chancellor, refusing to modify an injunction. On appeal, the order was reversed, and the complainants ordered to pay the costs of the appeal. The chancellor said, "I have no doubt that this court, on an appeal from an interlocutory decision of a vice chancellor, may make a decree respecting the costs on such appeal, which will authorize the party to enrol the same, and to take out execution against the person, or the property of the party against whom such costs are adjudged. (See 2 *R. S.* 613, § 2). Such indeed is the practice of this court in relation

to costs awarded in the, Court of Errors, on appeal from inter-locutory orders of the chancellor. The decree of the appellate court in such cases, is a final decree, so far as respects the costs awarded on the appeal, and those costs may be collected on an execution in the usual manner." He adverts then to the right of the party to proceed by attachment as for a contempt, and adds, " I conclude, therefore, that it was optional with the appellant in this case to have the decree of the chancellor, awarding costs on 'the appeal, enrolled, and to take out a *fieri facias*, or *capias ad satisfaciendum* thereon, or to apply for a precept to commit the party to prison until the costs were 'paid."

Under. this decision, there was then a concurrent remedy by execution or commitment in cases of orders to pay costs, under the fourth section. And under the third, either the remedy was exclusively by execution when it could be awarded by law, or was also concurrent in cases of money directed to be paid, other than costs.

On the 26th of April, 1831, the act to abolish imprisonment for debt was passed. After some contrariety of decisions, (4 *Paige*, 347, 12 *Wendell*, 220, 3 *Edwards*, 313), the chancellor in the last case before him, (Hosack *v.* Rogers, 11 *Paige*, 603), held, that no attachment could issue to enforce payment of money decreed to be paid, by a final decree. The remedy was by execution. That the remedy by process of contempt was not abolished. That it would be improper, however, for the court to evade the non-imprisonment act, by resorting to attachment, or a precept to commit, on a decree for payment of money only. The case might be different had it been a mere interlocutory order of the court, directing a justice who admitted trust funds to be actually in his possession, or under his control, to bring the same into court. The reservation in the second section of the non-imprisonment act would probably extend to such a case."

In this connection the case of Van Wezell *v.* Van Wezell, (1 *Edws.* 113, and 3 *Paige*, 38), may be referred to, particularly for the valuable opinion of the vice chancellor, upon the construc-tion of the English act, and of our own statute, as to voluntary assignments, (2 *R. S.* 31), showing how fully process of

attachment for non-payment of money was regarded as of the nature of an execution. (See also the case of M. Williams, a bankrupt, 1 *Sch. & Lef.*, 174, and anon 2 *Fowler's Exchq. Prac.* 107).

By an act of the 31st of January, 1843, (*Sess. Laws, ch.* 9), the 20th section of the statute as to contempts, was amended, and contained a provision that in all cases which had arisen, or might thereafter arise, under the provisions of the title, the court or tribunal which ordered such imprisonment, might, in their discretion, (in cases of inability to perform the requirements imposed), relieve the persons so imprisoned in such manner, and upon such terms, as they shall deem just and proper.

So far as the process for collection of costs was concerned, the statute of 24th of November, 1847, (*ch.* 390), provided that no person should be imprisoned for the non-payment of interlocutory costs, or for contempt of court in not paying costs, (with certain exceptions); but process in the nature of a *fieri facias* against personal property, might be issued for the collection of costs founded on such order of court.

It may then be assumed that prior to the Code, the law in our State upon this subject stood thus.

The interlocutory order for the payment of money admitted to be due in an answer, which would be enforced by process of commitment and imprisonment, would in general be only granted in cases of money received or withheld in violation of a trust. The character of trust moneys must have been impressed upon them.

Where the admission was of money due as a debt merely in its general acceptation, the party was obliged to wait until he could bring on the cause to a hearing. When so brought on, a decree could be made for payment. Even if this was an interlocutory decree as for an account, and other matters remained to be adjudged in the cause, the direction for payment could be enforced by an execution. No enrolment was necessary for an execution in such a case. If it were necessary, the practice allowed it to be made.

The imprisonment upon process for collection of costs, was abolished by the act of 1847, and a *fieri facias* against personal

property substituted. In a few accepted cases, such process was retained.

Before the act of 1843, a party imprisoned, as a trustee for example, for disobedience to an order for payment of money other than costs, (as well as in a case for costs), could obtain the benefit of a discharge, if he could be brought under the provisions of the statute as to voluntary assignments by a debtor imprisoned on execution. And under this act of January 31, 1843, the court might relieve a party imprisoned for non-payment of money, or for any contempt of any description whatever, upon such terms as should be deemed proper. I have before observed that the Code, until 1851, left these laws and process in full force.

What is the operation of the Code as amended in 1851, upon these provisions and rules ?

The provisions of the 244th section may be thus analyzed.

There must be an admission, on a pleading or examination, of possession or control of the thing demanded. That must be money or some other thing capable of delivery. It must be held by the party as trustee for another, or belong or be due to another. Then the court may order the same to be deposited in court, or delivered to the party, with or without security, subject to its further direction.

This provision refers to a thing capable of substantial possession and delivery; and I apprehend the term *money* is here used in the old legal acceptation, as old as the days of Lord Coke, viz., gold and silver, or the lawful circulating medium of the country. (Mann *v.* Mann, 1 *Johns. Ch. R.*, 236). This part of the section must mean money identified and set apart, as if it were in a bag.

This construction is rendered more clear by the next provision of the section. When the court shall have ordered the deposit of money, it may, besides punishing the disobedience as for contempt, make an order requiring the sheriff to take the money, and deposit or deliver it according to the direction of the court.

The case of an order to pay money into court must depend upon the last clause of this section, if it is at all covered by it. It is provided, that when the answer of the defendant admits

part of the plaintiff's claim to be just, the court on motion may order such defendant to satisfy that part of the claim, and *may* enforce the order as it enforces a provisional remedy.

The 468th section of the Code provides that all statutory provisions inconsistent with the act are repealed. By the 471st section all existing statutory provisions relating to actions not inconsistent with the act and in substance applicable to the actions therein provided, are retained in force ; and by section 469 the present rules and practice of the courts in civil actions, when consistent with the act, are to continue in force, subject to the revision of the courts.

There does not appear to be any inconsistency between this portion of the 244th section and these provisions. The language is not imperative, but implies a discretion. It may be well construed to mean, that when an answer has admitted such a claim as would formerly have been enforced by process of contempt, it may be so enforced now ; and when the admission is of such a character as that enforcement could only be by execution, an execution must be resorted to ; and if that cannot be had until final judgment, the party must wait until he has obtained it.

The other construction contended for is, that it covers cases of every character, so that in an action on two promissory notes, if one is admitted to be due, and the other contested, such an order resulting in imprisonment might be made, and the anomaly presented of a committal upon intermediate process for a demand, when if the case had gone to judgment, such process would be illegal.

The judges of this court cannot give such a construction to this clause. They decide as far as this:—That the court may on motion, under the last clause of the 244th section, order money to be paid to the plaintiff, or into court, which is expressly admitted to be due from the party, and may enforce the order by process of committal, in cases where the money has been received, or is held, in a fiduciary capacity, so that as to such demand, an order or arrest could have been made under the 179th section of the Code—such was the case of Buchans *v.* Carey, (4 *Sand., S. Ct.,* 706–7). When the defendant is in such a fiduciary situation, he can be arrested at any time

before judgment; and execution may finally be had against his person. (§ 288).

We have had the opportunity of perusing several of the opinions of the judges on two cases in the Court of Common Pleas, the one at special and the other at general term—Meyers v. Trimble, (1 *Abbotts' Pr.·R.*, 220, 399), and Merritt v. Thompson. (*Ib.* 223). In the former, the action was on a promissory note. The defendant alleged a set-off as to part of the demand, and admitted the residue to be due—and the order for payment of that part was made—an attachment was directed to issue upon disobedience, and an appeal was taken to the general term from such order. The order was affirmed.

The view which the learned judges took of the Code was this : that the provision in question could be reconciled with the continued force of the act abolishing imprisonment for debt in this way—that if it appear that the debtor is unable to pay the sum ordered to be paid, that may be deemed a sufficient excuse, when he appears to answer for apparent contumacy.

This view leads to the conclusion that a discrimination is to be made between the parties whose poverty is established, and those who are in affluent circumstances. The latter, when his property is so situated as not to be reached by an execution at law, could not be imprisoned upon a judgment for the identical debt, for non-payment of part of which he may be imprisoned on this proceeding. Undoubtedly the non-imprisonment act contains no such difference, while by construing the Code as we have done, consistency is reached with the law of a Court of Equity, as it existed before, and with the provision in the same title relating to arrests.

The remaining question is, whether the case falls within this description—and upon a careful examination of the facts and authorities, we consider that the judge at special term fell into an error, in making the order for payment which is appealed from.

It need not be disputed that where a partnership is dissolved, and one of the partners, by tacit permission, or express agreement, winds up the affairs, and receives the assets; and then expressly admits, that upon liquidation of the accounts a given sum belongs to his co-partner, he should be treated as

holding the same in the character of agent or trustee. This was substantially the case of Roberts *v.* ·Law, (4 *Sandf.* 642). That of Coursen *v.* Hamlin, (2 ˙ *Duer*, 513), was similar. The order at special term directing the payment was indeed reversed by the general term, but upon the ground that the admission· in the answer was not sufficiently explicit. The case of Mills *v.* Hanson, (8 *Vesey*, 68), was also one of a partnership.

But without an express admission to this effect, a partner collecting in the funds cannot be subjected to such a motion. (Foster *v.* Donald, *Jacobs'* *R.* 252 ; Richardson *v.* The Bank of England, 4 *M. & Craig*, 165). ˙

The English cases upon the whole subject are well collected and discussed in *Daniel's Practice*, 1636–1644.

But in the present case, the partnership was dissolved on the 10th of January, 1851 ; the defendant then retired from the business, and sold out his interest to the plaintiff for the sum of $16,500, with interest. The plaintiff was to continue the business, taking the whole property except that certain real estate was to be held by the defendant as security for the purchase money, and until it was· paid, when he was to transfer the same to the plaintiff.

In July, 1851, a new agreement was entered into between the parties, by which the lands and contracts held by him as security were to be taken by him in settlement upon an appraisement ; the deficiency to be made good by the plaintiff, and any excess of value to be paid by the defendant ; the plaintiff to pay the taxes and incumbrances, and guarantee the validity of the titles to the lands.

The appraisal was made according to this agreement, and the plaintiff in this complaint, after stating this amount, an amount due upon the contract taken as cash, and a sum received by the defendant from the assets, deducts these several amounts from the purchase money, and claims a balance due of $4594 63.

The defendant in his answer admits that such balance is the sum of $3848 03. In the affidavit produced by the defendant in opposition to this motion, he claims only· a reduction from this admitted sum of $492 33, the sum of $376 05, on ac-

count of the failure of the title of a parcel of the land, and the balance paid for taxes paid by him.

We are of opinion that the relation of partners between the plaintiff and defendant was, by the operation of these agreements, terminated and annulled. Their rights and liabilities were to be determined by the contracts, and these finally left the plaintiff a creditor of the defendant under the sealed contract of July, 1851, for the excess of the lands and contracts, and sums received by the defendant, over the purchase money of the joint concern.

In this view, then, the relation of mere debtor and creditor exists between them. There is nothing of an agency, a trust, or a fiduciary character in any sense subsisting.

For these reasons we think the order was wrong, and must be reversed.